UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA VARGAS,

            Plaintiff,

    v.

EVERGREEN PROFESSIONAL
RECOVERIES INC., *et al.*,

            Defendants.

CASE NO. 2:21-cv-00926-RSL-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 25, 2022

This matter is before the Court on referral from the District Court and on defendant Kaiser Foundation Health Plan of Washington's motion for summary judgment. Dkts. 4, 14.

In June 2016, plaintiff suffered serious injuries in a motorcycle accident. She was insured by Kaiser's predecessor, Group Health Cooperative (a Health Maintenance Organization ("HMO")).[1] She also carried "MedPay" insurance through Progressive Insurance that was

---

[1] For purposes of this Report and Recommendation, Kaiser and Group Health will generally be treated interchangeably.

REPORT AND RECOMMENDATION - 1

(according to the parties) functionally the equivalent of automobile personal injury protection ("PIP") coverage, up to $2,500.

According to plaintiff, Kaiser and a debt collection agency attempted to collect $15,632.00 in medical debts from her, even though the HMO provided coverage "on a prepayment basis" for her medical services, so that she never should have incurred these amounts. Plaintiff sues Kaiser and the collection agency under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and the Washington Consumer Protection Act, ch. 19.86 RCW, and for civil conspiracy and outrage.

Kaiser now moves for summary judgment dismissal of all claims against it. Dkt. 14. Resolution of the summary judgment motion turns on the interpretation of an HMO policy exclusion that excluded coverage for services to the extent that plaintiff had other benefits available to her. Kaiser argues that this language excluded coverage for the services that plaintiff received, due to her Progressive PIP coverage. For purposes of the motion, there is no genuine factual dispute that plaintiff had PIP coverage available to her but did not actually exhaust or receive amounts from this coverage toward her medical bills related to the accident. However, the plain language of the policy exclusion at issue does not exclude coverage where the insured has other coverage available but does not receive funds under that coverage. And the mere existence of the PIP coverage does not invoke the HMO policy exclusion. Therefore, based on these facts and the plain language of the policy, read in context, the summary judgment motion should be denied.

///

REPORT AND RECOMMENDATION - 2

# BACKGROUND

### I. Kaiser's Summary Judgment Motion and Evidence

In support of the summary judgment motion, Kaiser relies on its Patient Financial Services Revenue Cycle Manager's (Michelle Barstow) declarations and attachments. Dkts. 15, 22; *see also* Dkt. 21 (discovery responses). Barstow states that following plaintiff's accident, Kaiser provided services to plaintiff and billed Progressive because the services related to a vehicle accident. Dkt. 15, at 1. However, Progressive denied the charges on the basis that plaintiff's attorney had informed Progressive that plaintiff "had made the decision not to invoke her PIP coverage." Dkt. 15, at 1–2.

Kaiser also provides correspondence to plaintiff and her attorney, including an August 30, 2016, letter to plaintiff and a September 1, 2016, letter to her attorney Bobby Saadian, both of which letters sought additional information from plaintiff to determine who was responsible for her medical expenses. Dkt. 15, at 60–63. The letter to plaintiff stated that her agreement related to the HMO "contain[ed] language that excludes coverage for the expense of any services payable by first party insurance." Dkt. 15, at 60.

Kaiser also provides internal and hospital account notes. These include that on August 30, 2016, plaintiff called Kaiser to inform them of her PIP insurance with Progressive and the claim number. Dkt. 15, at 69. On November 2, 2016, plaintiff's attorney was contacted because plaintiff had decided not to present a claim for medical benefits and was "unable to pay charges." Dkt. 15, at 73. Her attorney "was not aware of their client's decision." Dkt. 15, at 73.

Plaintiff called Kaiser on December 1, 2016, stating that she was "very concerned that she is getting billed" and that she thought her Progressive coverage was "exhausted." Dkt. 15, at 68. A Kaiser employee explained the "procedure of PIP and [subrogation] to her." Dkt. 15, at

1  68. The next day, a Kaiser representative learned from Progressive that plaintiff's PIP was not
2  exhausted, and the representative left plaintiff a message informing her of this. Dkt. 15, at 68.
3  Further, on February 17, 2017, a Kaiser representative spoke to a Progressive employee
4  who stated that plaintiff's attorney had decided against using plaintiff's PIP coverage, and Kaiser
5  accordingly transferred all charges for "denial." Dkt. 15, at 68. Kaiser also provides a letter to
6  plaintiff from February 21, 2017, stating that Kaiser had learned of plaintiff's Progressive
7  insurance coverage and directing her to contact her agent to open a claim on her behalf. Dkt. 15,
8  at 71.

9  **II. Plaintiff's Response and Evidence**

10  Plaintiff asserts in her summary judgment response that she did, in fact, invoke her PIP
11  coverage. Dkt. 19, at 4. She relies on her own declaration, which recounts that she opened a
12  claim with Progressive shortly after her accident and that she provided information about her
13  Progressive claim to Kaiser on August 30, 2016. Dkt. 19-1, at 2.
14  Plaintiff states that she did not understand why Kaiser continued to send her bills for
15  medical services in late 2016, since "[a]s a member of an HMO, I did not need 'preapproval[.]'"
16  Dkt. 19-1, at 3. She states that on April 13, 2017, she emailed Kaiser to speak with a billing
17  specialist and was told that her claims were denied "for being non-compliant with Kaiser
18  Permanente's request for information regarding your recent motor vehicle accident." Dkt. 19-1,
19  at 3.
20  As noted above, Kaiser has provided evidence that in 2016 and 2017, it sent letters to
21  plaintiff and her attorney informing her of the exclusion and directing plaintiff to open a claim
22  with Progressive and that a Kaiser employee left plaintiff a voice message telling her that her
23  Progressive PIP was not exhausted. But plaintiff asserts that she did not know until 2021 that
24

Kaiser believed that she owed money because she had not used her Progressive coverage. Dkt. 19-1, at 3–4. She claims that in 2016 she "was sure" that her Progressive coverage was exhausted by her treatment for the injuries from her accident, since her Progressive coverage was "only $2,500," but she does not provide further detail about whether she in fact ever received funds from her Progressive coverage or whether she or her attorney filed a claim but subsequently declined to use the Progressive coverage. *See* Dkt. 19-1.

## DISCUSSION

### I. Legal Principles

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Conclusory allegations and mere speculation are not enough to create a genuine issue of material fact. *See, e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Finally, the Court may not engage in credibility determinations or weighing of the evidence when ruling on a summary judgment motion. *See Anderson*, 477 U.S. at 255.

The Court applies Washington state law to interpret the policy at issue. *See Larson Constr. Co. v. Or. Auto. Ins. Co.*, 450 F.2d 1193, 1195 (9th Cir. 1971). Under Washington State law, "the interpretation of language in an insurance policy is a matter of law." *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271 (2011). The Court must review the policy in its entirety and not interpret phrases in isolation. *Id.* It is the insurer's burden to show that an exclusion applies. *Id.* at 272.

1    "The first step in interpreting an insurance contract is to determine if the policy language
2    is ambiguous. Policy language is ambiguous if it is, on its face, susceptible to different
3    reasonable interpretations." *Alaska Nat. Ins. Co. v. Bryan*, 125 Wn. App. 24, 30 (2004) (citing
4    *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424 (1997)). If the language in an exclusionary
5    clause is ambiguous, the Court will construe it strictly against the insurer. *Peasley*, 131 Wn.2d at
6    424. If it is clear and unambiguous, the Court must enforce it as written and cannot modify the
7    contract or create an ambiguity where none exists. *Id.*

**II. Undisputed Facts for Purposes of Summary Judgment**

Before turning to the interpretation of the exclusionary clause at issue, the Court addresses the evidence relevant to whether plaintiff in fact invoked and used her Progressive PIP coverage in this matter. Kaiser argues that plaintiff never opened a claim with Progressive or pursued payment for her medical expenses. *See* Dkt. 14, at 4. Plaintiff argues that she invoked her benefits and that it would "def[y] common sense" for her not to use her PIP coverage. Dkt. 19, at 3 & n.1.

In support of its summary judgment motion, Kaiser provides evidence in the form of employee case notes that on August 30, 2016, plaintiff said that she had Progressive coverage and provided a Progressive claim number. Dkt. 15, at 69. On September 1, 2016, a Kaiser employee called Progressive, who "confirmed they do have Med Pay for the member[.]" Dkt. 15, at 68. On December 1, 2016, plaintiff called Kaiser, was very concerned about billing for her services, and thought that her Progressive coverage was exhausted. Dkt. 15, at 68. On December 2, 2016, a Progressive employee told a Kaiser employee that plaintiff's coverage was not exhausted, and Kaiser notes state that the Kaiser employee viewed a note stating that plaintiff had elected not to use her Progressive coverage. Dkt. 15, at 68. On February 17, 2017, a

1 | Progressive adjuster stated that plaintiff's attorney had decided not to use the Progressive
2 | coverage. Dkt. 15, at 68.
3 |     Plaintiff argues that the Court should strike Barstow's statements in her declaration that
4 | Kaiser billed Progressive but Progressive denied the charges, explaining that plaintiff's attorney
5 | informed Progressive that plaintiff had decided not to invoke her PIP coverage. Dkt. 15, at 1–2.
6 | The Court declines to rule on this request to strike, as the Court does not rely on Barstow's
7 | statements when analyzing these issues. Instead, the Court focuses on the evidence in the case
8 | notes that Kaiser has provided.
9 |     Further, to the extent that plaintiff is challenging the case notes, the Court disagrees that
10 | it cannot consider alleged statements made by Progressive and Kaiser employees, plaintiff, or
11 | plaintiff's attorney as documented in the notes. At the summary judgment stage, the court
12 | examines whether the *substance* of the evidence is admissible even if it is inadmissible in its
13 | current form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Insurance company case
14 | notes about a claim may be admitted as business records, subject to appropriate authentication.
15 | *See* Fed. R. Evid. 803(6); *see also* Dkt. 22 (Barstow's declaration about Kaiser's database
16 | system). Progressive and Kaiser employees could presumably testify as to their own personal
17 | knowledge, and plaintiff's own statements and those of her attorney may be admissible as
18 | statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(C)–(D). The Court declines to
19 | strike this evidence at this time, although it does not rule on the admissibility of such evidence at
20 | trial. Although the Court declines to strike this evidence, it nevertheless agrees with plaintiff that
21 | the summary judgment motion should be denied.
22 |     For her part, plaintiff acknowledges that she opened the Progressive claim and states that
23 | she was "sure" that her Progressive coverage was exhausted because her accident required so
24 |

REPORT AND RECOMMENDATION - 7

many procedures. Dkt. 19-1, at 2. She claims that she did not understand why she continued to be billed for services and that despite her efforts for clarification, she did not know until 2021 that Kaiser believed she owed money because she allegedly had not used her Progressive coverage. Dkt. 19-1, at 3–4.

Based on this evidence, at least for purposes of summary judgment, and taking the evidence in the light most favorable to plaintiff, it is undisputed that plaintiff filed a claim with Progressive. However, plaintiff has failed to provide evidence that she in fact used her Progressive coverage beyond simply filing the claim and has not provided anything more than speculation in response to Kaiser's evidence that either plaintiff or her attorney decided not to pursue the Progressive claim. Thus, when analyzing this issue, and considering the evidence in the light most favorable to plaintiff, the Court considers plaintiff as having filed the Progressive claim but never used her coverage or obtained any compensation for her medical bills from Progressive.

The Court turns to the parties' arguments regarding the meaning of the exclusion in the HMO Benefits Booklet.

**III. Interpretation of the Exclusion**

    **A. Meaning of "Available"**

Kaiser argues that plaintiff had benefits "available" to her that she did not use, so that this exclusion in the HMO Benefits Booklet applies:

> *Services to the extent benefits are "available" to the Member* as defined herein under the terms of any vehicle, homeowner's, property or other insurance policy, except for individual or group health insurance, pursuant to medical coverage, medical "no fault" coverage, personal injury protection coverage or similar medical coverage contained in said policy. For the purpose of this exclusion, benefits shall be deemed to be "available" to the Member if the Member receives benefits under the policy either as a named insured or as an insured individual under the policy definition of insured.

1 | Dkt. 15, at 42 (emphasis added).  That is, Kaiser argues that this language excludes coverage
2 | where plaintiff had the ability to use her PIP insurance but failed to do so.  The Court disagrees
3 | and concludes that the exclusion unambiguously applies only where the member in fact "receives
4 | benefits."

5 | The Court begins with the plain language of the exclusion, which starts by excluding
6 | services to the extent that benefits are otherwise available.  Were this provision limited solely to
7 | the first sentence, Kaiser's arguments would be more persuasive.  The plain meaning of
8 | "available" encompasses benefits that are "easy or possible to get or use" or "present or ready for
9 | use"—but not necessarily actually used.  *See* Available, *Merriam-Webster's Dictionary*,
10 | https://www.merriam-webster.com/dictionary/available (last visited Feb. 2, 2022); *see also*
11 | *Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha*, 126 Wn.2d 50, 77 (1994) (explaining
12 | that undefined terms in an insurance policy "are to be interpreted in accord with the
13 | understanding of the average purchaser of insurance, and the terms are to be given their plain,
14 | ordinary and popular meaning.").  So, the first sentence would suggest that Kaiser is correct that
15 | the exclusion applies where PIP coverage could be used, but is not actually used, by Kaiser's
16 | insured.

17 | However, the second sentence of the exclusion further defines "available" to mean that
18 | the Member "receives benefits under the policy[.]"  Dkt. 15, at 42; *see also Black v. Nat'l Merit*
19 | *Ins. Co.*, 154 Wn. App. 674, 679 (2010) ("If a term is defined in a policy, then the term will
20 | be interpreted in accordance with that policy definition.").  Although "receives" is not further
21 | defined in the policy, to "receive" something is generally to "come into possession of" it.  *See*
22 | Receive, *Merriam Webster's Dictionary*, https://www.merriam-webster.com/dictionary/receive
23 | (last visited Feb. 2, 2022) (transitive verb).  Thus, the policy applies a more restrictive meaning
24 |

to "available" than the word's common meaning. Plaintiff had to in fact come into possession of benefits under her other policy before those benefits were "available" to her in the sense used in the exclusionary language.

Applying this interpretation, the exclusion does not apply to plaintiff because, at least based on the evidence at this stage, viewed in the light most favorable to plaintiff, she never actually "received" any funds from Progressive toward her medical expenses.

Indeed, if the Court were to interpret the exclusion as meaning that the simple *existence* of other benefits was enough for the exclusion to apply, this would fail to give effect to the second sentence defining "available" benefits as benefits a member "receives." But when interpreting an insurance policy, the Court must avoid interpretations that render sentences in the policy superfluous. *See Queen City Farms, Inc.*, 126 Wn.2d at 94 (refusing to interpret an insurance policy in a manner that would cause some of its terms to be superfluous and without meaning).

Kaiser's arguments to the contrary are not persuasive. Kaiser argues that if plaintiff's interpretation is correct, an insured may simply choose not to use benefits under other insurance policies and leave Kaiser to "foot the entire bill" and to "guess at what benefits a member might have under other policies[.]" Dkt. 20, at 6, 9. But the Court will not engage in a strained reading of the clear meaning of the exclusionary language to reach a result that benefits Kaiser. *See Teague Motor Co. v. Federated Serv. Ins. Co.*, 73 Wn. App. 479, 482 (1994). Separately, it should be noted that the parties do not ask the Court to otherwise decide whether plaintiff may have any legal duty under the Benefits Booklet to pursue coverage through other insurance policies. Although it is undisputed for purposes of this motion that plaintiff did not use her Progressive coverage, why this may have occurred is unclear. *Compare* Dkt. 15, at 68

1  (plaintiff's attorney purportedly decided not to use her coverage), *with* Dkt. 15, at 73 (plaintiff's
2  attorney's office unaware of plaintiff's "decision not to use her . . . coverage").
3  Regarding Kaiser's arguments, the Court also observes that the Benefits Booklet
4  generally seeks to avoid double compensation to plaintiff. *See, e.g.*, Dkt. 15, at 55 ("Group
5  Health's subrogation and reimbursement rights shall be limited to the excess of the amount
6  required to fully compensate the Injured Person for the loss sustained, including general
7  damages."). The interpretation of the exclusionary language as barring coverage only where
8  plaintiff actually receives benefits from another policy is consistent with this intent.
9  Moreover, Kaiser's interpretation—that whether or not plaintiff "filed a claim with
10 Progressive, the exclusion applied"—is unreasonable. *See* Dkt. 20, at 9. If this were the case,
11 then plaintiff would be liable notwithstanding her HMO coverage, merely because she carried
12 other insurance and regardless of whether any benefits were paid to her under the other
13 insurance. That is not a tenable reading of the exclusion.
14 Therefore, the Court concludes that the exclusion in question unambiguously applies only
15 to a member who in fact "receives" benefits from other, PIP coverage.

### B. Meaning of "Benefits"

17 Kaiser also argues that "benefits" in the exclusion means more than simply payments and
18 that plaintiff did, indeed, receive "benefits" because she had the benefit of "the [Progressive]
19 insurance coverage itself." Dkt. 20, at 8. Kaiser essentially asserts that the mere fact of
20 plaintiff's Progressive coverage means that she is liable for the services she received.
21 The Benefits Booklet does not define "benefits." However, it does generally use the
22 word in a manner showing that "benefits" incorporates more than simply payments from other
23 coverage. *See Black*, 154 Wn. App. at 681–82 ("In the absence of anything in the context of a
24

contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same sense throughout the contract." (Internal citation and quotation marks omitted.)). For instance, the primary "benefit" of plaintiff's plan was "health care on a prepayment basis." Dkt. 15, at 4. And the plain meaning of "benefits" goes beyond mere payments. *See* Benefit, *Merriam Webster's Dictionary*, https://www.merriam-webster.com/dictionary/benefits (last visited Feb. 2, 2022) (defining a benefit, among other things, as "a payment *or service* provided for under an . . . insurance policy" (Emphasis added.)).

Therefore, "benefits" as ordinarily understood and as otherwise used in the Benefits Booklet is a relatively expansive term that could incorporate the mere fact of "coverage" under the Progressive policy.

But such an interpretation is untenable because it is inconsistent with the intent of the exclusion as a whole. The exclusion bars coverage for services "to the extent" that a member receives other benefits. If "benefits" means merely having other coverage, then the simple existence of another policy potentially providing coverage would mean that plaintiff could not obtain services under her HMO. Yet the Benefits Booklet otherwise contemplates there being at least some HMO coverage in situations where plaintiff has other coverage. *See, e.g.*, Dkt. 15, at 50 (describing how benefits are coordinated if a member has coverage under more than one plan); Dkt. 15, at 54 (describing Kaiser's subrogation and reimbursement rights if a member receives or is entitled to receive amounts "from any source.").

Therefore, based the Benefits Booklet as a whole, the Court finds that "benefits" as used in the relevant exclusion cannot reasonably be construed to mean the mere fact of coverage under another policy. Moreover, even if the District Court agreed that Kaiser's understanding of "benefits" was one reasonable interpretation, the outcome would be the same. Where the

language in a policy exclusion is ambiguous, the ambiguity must be "strictly construed against the insurer." *Peasley*, 131 Wn.2d at 424; *see also Greer v. NW. Nat'l Ins. Co.*, 109 Wn.2d 191, 201 (1987).

In short, the Court finds that the exclusionary language at issue is unambiguous and does not exclude the relevant services here, based on the evidence in the light most favorable to plaintiff. The Court does not address the remainder of plaintiff's arguments. The summary judgment motion should be denied.

## CONCLUSION

The undersigned recommends that Kaiser's summary judgment motion (Dkt. 14) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 25, 2022,** as noted in the caption.

Dated this 8th day of February, 2022.

J. Richard Creatura
Chief United States Magistrate Judge