UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA VARGAS,

        Plaintiff,

    v.

EVERGREEN PROFESSIONAL
RECOVERIES INC., *et al.*,

        Defendants.

CASE NO. 2:21-cv-00926-RSL-JRC

REPORT AND
RECOMMENDATION

NOTING DATE: November 18, 2022

This matter is before the Court on referral from the District Court and on the parties'

cross-motions for summary judgment.  Dkts. 4, 49, 51, 52.

In June 2016, plaintiff suffered serious injuries in a motorcycle accident.  She was

insured by Group Health Cooperative, now Kaiser Foundation Health Plan of Washington

("Kaiser") (a Health Maintenance Organization ("HMO")).[1]  She also carried "MedPay"

insurance through Progressive Insurance that was (according to the parties) functionally the

equivalent of automobile personal injury protection ("PIP") coverage, up to $2,500.

---

[1] For purposes of this Report and Recommendation, Kaiser and Group Health will generally be treated interchangeably.

1    According to plaintiff, Kaiser and Evergreen Professional Recoveries Inc ("EPR")

2  attempted to collect $15,632.00 in medical debts from her, even though the HMO provided

3  coverage "on a prepayment basis" for her medical services, so that she never should have

4  incurred these amounts.

5    Plaintiff sues Kaiser and EPR under the Fair Debt Collection Practices Act ("FDCPA"),

6  15 U.S.C. §§ 1692 *et seq.*; the Washington Collection Agencies Act ("WCAA"), ch. 19.16

7  RCW; and the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW, and for civil

8  conspiracy and outrage.  Her claims are twofold:  that she does not owe the amounts sought and

9  that the manner in which defendants pursued the debt was unlawful.

10    Plaintiff moves for summary judgment as to defendant EPR's liability pursuant to the

11  FDCPA and WCPA, as well as Kaiser's liability pursuant to the WCPA. Dkt. 49, at 2, 12.

12  Plaintiff has shown that she is entitled to summary judgment on the issue of EPR's liability under

13  the FDCPA, a strict liability statute to which EPR has not established a defense, but has failed to

14  make such a showing on any of her other claims against either party.  Plaintiff has not shown that

15  EPR engaged in any prohibited conduct under the WCPA.  As to Kaiser, plaintiff asserts WCPA

16  claims for denying plaintiff's claim in bad faith and for misrepresenting why it did so, but both

17  of these alleged violations arise from actions that occurred outside the statutory limitation period.

18  Plaintiff's only other WCPA claim against Kaiser is predicated upon Kaiser's assignment of the

19  alleged debt to EPR, but plaintiff has not shown how Kaiser is liable for the actions of its

20  assignee.  Thus, plaintiff's motion for summary judgment should be GRANTED only with

21  respect to her FDCPA claim against EPR and DENIED as to all of her other claims.

22    With the exception of the FDCPA issue, EPR is entitled to summary judgment dismissal

23  of plaintiff's WCPA claim because it is based on a statutory subsection inapplicable to the facts

24

at hand.  In addition, EPR is entitled to summary judgment dismissal of plaintiff's common law

claims for conspiracy and outrage, because plaintiff has failed to support any of these claims

with evidence that would constitute actionable conduct.  Thus, the undersigned recommends that

EPR's motion be DENIED only with respect to the FDCPA claim and GRANTED as to all of

plaintiff's other claims.

Finally, Kaiser is entitled to summary judgment dismissal as to all of plaintiff's claims

against it under the WCPA, as plaintiff's claims for bad faith denial of coverage and

misrepresentation are both time-barred, arising out of conduct that occurred well before the

commencement of the four-year WCPA statutory limitation period.  Plaintiff's one remaining

claim, based on a novel theory that Kaiser should have better monitored EPR's debt collection

effort, would require this Court to find Kaiser liable for conduct in which it had no part and is

without merit.  Thus, the undersigned recommends that Kaiser's motion for summary judgment

dismissal be GRANTED.[2].

## BACKGROUND

Plaintiff asserts that she began seeking medical care from in-network providers in the

latter half of 2016. Dkt. 1-1, at 7.  She had received this care while being insured by Kaiser's

predecessor, Group Health Cooperative, on a pre-paid basis.  According to plaintiff, in early

2021, she was surprised to learn that EPR was suing her in state court to collect outstanding

medical debts that Kaiser had assigned to EPR. Dkt. 1-1, at 7.  Plaintiff claims that the collection

lawsuit "provided almost no information at all, stated no cause of action, and contained no

attachments," simply demanding $15,632.00 and costs. Dkt. 1-1, at 7–8.  In response to

plaintiff's correspondence, EPR reiterated its demand and attached invoices from Kaiser.  Dkt. 1-

---

[2] Kaiser should remain a party to the action since it has not yet moved for summary judgment on plaintiff's claims of outrage and conspiracy, although this Court has recommended dismissal of those claims against EPR.

1, at 8.  Plaintiff maintains that because Group Health/Kaiser rendered services on a pre-paid

basis, she cannot be liable for more than, if anything, a small co-pay for her visits.  Dkt. 1-1, at 9.

Plaintiff brings claims against both defendants under the FDCPA for false, deceptive, and

misleading and for unfair or unconscionable means in collecting the debt.  Dkt. 1-1, at 13–14.

She also brings claims against both defendants under the WCAA and WCPA for unlawfully

demanding amounts not owed (Dkt. 1-1, at 15) and against defendant Kaiser, alone, for seeking

to have EPR collect the debt and thereby violating the WCPA.  Dkt. 1-1, at 16.  Plaintiff brings

claims of conspiracy and outrage against both defendants, including alleging that Kaiser

manufactured invoices to make it seem like plaintiff had simply refused to pay her doctors and

that defendants concealed their belief that they were entitled to subrogation of amounts paid

under another insurance policy that plaintiff held.  Dkt. 1-1, at 17–18.  Plaintiff seeks injunctive

relief and damages.  Dkt. 1-1, at 19.

## DISCUSSION

### I. Plaintiff's Summary Judgment Motion and Evidence

Plaintiff has moved for partial summary judgment against both defendants.  Against

defendant EPR, plaintiff requests summary judgment in her favor on her FDCPA and

WCPA/WCAA claims against defendant EPR because EPR allegedly violated these statutes by

(1) seeking to collect a debt that was not actually owed, (2) issuing adverse credit reporting

despite dismissing its state court case against her, and (3) refusing to serve plaintiff or her

counsel with state court filings.  Dkt. 49, at 8–9.  Against defendant Kaiser, plaintiff seeks

summary judgment on her WCPA claims because defendant Kaiser allegedly violated these

statutes by (1) seeking to collect a debt that was not actually owed, (2) giving competing

misrepresentations about why plaintiff owed the debt, (3) pursuing plaintiff for amounts beyond

1   the actual cost of her services, and (4) failing to monitor ongoing litigation.  *See generally* Dkt.

2   49.

3         In support of her summary judgment motion, plaintiff relies on declarations of herself and

4   her attorney, Jason Anderson, and supporting exhibits thereto.  *See* Dkts. 35-1, 35-2.  Plaintiff

5   states that after her injury in the traffic collision, she was unexpectedly billed for the full cost of

6   her treatment, despite being a member of Group Health's HMO, and was unable to discern why

7   this was the case before the HMO had referred the bill to EPR for collection.  Dkt. 35-2, at 2.

8   Plaintiff avers that she received inconsistent explanations for this bill: first, in an online help

9   window, she was told that she had failed to comply with Kaiser's request for further information

10  about the collision; later, she was told that Kaiser had in fact denied coverage because she had

11  failed to exhaust the benefits of her PIP plan.  Dkt. 19-1, at 3–4.  The parties do not dispute that

12  plaintiff never received any PIP benefits, and plaintiff's failure to do so remains Kaiser's basis

13  for denying coverage.  *See* Dkt. 52, at 8.

14        Following Kaiser's referral of the debt to EPR, EPR began attempting to collect the

15  amount.  After first attempting to call plaintiff and sending a demand letter which went

16  unanswered, EPR filed a lawsuit against plaintiff in King County District Court in August 2018

17  and, beginning in August 2019, reporting the unpaid debt to credit bureaus, negatively affecting

18  plaintiff's credit score.  Dkt. 35-2, at 2.  However, EPR never actually served the summons and

19  complaint for this lawsuit on plaintiff, and it dismissed its own action in June of 2020.  Dkt. 34-

20  1, at 68–70.  EPR initiated a second collection lawsuit on January 17, 2021, seeking payment of

21  $15,632 for "medical goods and services."  Dkt. 9, at 6.  After plaintiff wrote to EPR to seek

22  more information on what was owed, she received a letter accompanied by a series of invoices

23  from Kaiser.  Dkt. 35-2, at 2.  Plaintiff obtained counsel and issued discovery requests in this

24

1    lawsuit in April of 2021.  Finally, in response to plaintiff's interrogatories, EPR responded that

2    plaintiff had received services from Kaiser but had "not paid in full for said services," identified

3    plaintiff's insurance policy, and provided a copy of plaintiff's coverage agreement.  Dkt. 35-1, at

4    4.

5        Shortly thereafter, EPR communicated with the district court *ex parte*, seeking, first, to

6    prevent a default judgment and, then, to dismiss the suit without prejudice; the district court did

7    so on May 28, 2021.  Dkt. 35-1, at 86.  EPR, however, continued reporting plaintiff's non-

8    payment of the debt to credit bureaus, as plaintiff learned when she allegedly was told she would

9    not quality for a home mortgage loan due to the unpaid amount.  Dkt. 35-2, at 2.  Shortly after

10   EPR's suit was dismissed without prejudice, plaintiff initiated this lawsuit in King County

11   Superior Court in June 2021.  On July 12, 2021, EPR removed the case to this Court. Dkt. 1.

12       **A.  Plaintiff's FDCPA Claims against EPR**

13           1. Statutory Framework

14       The Fair Debt Collection Practices Act was enacted to protect consumers from improper

15   or abusive debt collection efforts.  15 U.S.C. § 1692.  The FDCPA is a strict-liability statute

16   which "makes debt collectors liable for violations that are not knowing or intentional." *Reichert*

17   *v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008); *see also McCollough v. Johnson,*

18   *Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).  "A single violation of any

19   provision of the Act is sufficient to establish civil liability under the FDCPA." *Taylor v. Perrin,*

20   *Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997).  The FDCPA is a remedial

21   statute construed liberally in favor of the consumer. *Tourgeman v. Collins Fin. Servs., Inc.*, 755

22   F.3d 1109, 1118 (9th Cir. 2014); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d

23   1162, 1176 (9th Cir. 2006) ("we wish to reinforce that the broad remedial purpose of the FDCPA

24

is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors.").  Section 1692e prohibits the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  Section 1692e(2) prohibits "[t]he false representation of ... the character, amount, or legal status of any debt." *Id.*  Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.*

Courts evaluate compliance with the FDCPA by viewing the defendant's conduct through the eyes of a hypothetical "least sophisticated debtor." *See, e.g.*, *Clark.*, 460 F.3d at 1171.  This objective standard applies even if the recipient of a communication is "unusually savvy," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011), or did not actually rely on the debt collector's representation, *Tourgeman*, 755 F.3d at 1117.

Unlike a "reasonable" person, the least sophisticated debtor, while not unreasonable, "is comparatively uninformed and naïve about financial matters and functions as an average consumer in the lowest quartile (or some other substantial bottom fraction) of consumer competence." *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1196 (9th Cir. 2019).  Still, this person is not literally "the *least* intelligent consumer in this nation of [over] 300 million people," and does not adopt "bizarre, idiosyncratic, or peculiar misinterpretations," *Gonzales*, 660 F.3d at 1062.

Finally, the FDCPA contains a statutory limitation period that bars any claims for violations brought more than one year after the violation occurs.  15 U.S.C. §1692k(d).  In *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019), the United States Supreme Court clarified that, absent equitable tolling, this statutory limitation period begins when the conduct occurs, as

1    opposed to when the plaintiff becomes aware of the conduct.  Thus, the Court will consider only

2    EPR's conduct in the year prior to plaintiff's commencement of this lawsuit on June 16, 2021.

3    Dkt. 1-1.

4                           2. Plaintiff's FDCPA Claims

5         Plaintiff maintains that EPR violated 15 U.S.C. § 1692e, which generally prohibits "any

6    false, deceptive, or misleading representation in connection with the collection of any debt."

7    Dkt. 49, at 7.  In particular, plaintiff alleges violations of § 1692e(2), which prohibits "[t]he false

8    representation of . . . the character, amount, or legal status of any debt[,]" § 1692e(5), prohibiting

9    threats "to take any action which cannot be legally taken," and § 1692e(10), which prohibits

10   "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt

11   or to obtain information concerning a consumer."  *Id.*  In addition, plaintiff alleges that EPR

12   violated § 1692f, which generally prohibits the use of "unfair or unconscionable means to collect

13   or attempt to collect any debt[,]" and, specifically, §1692f(1), which prohibits "[t]he collection of

14   any amount [. . .] unless such amount is expressly authorized by the agreement creating the debt

15   or permitted by law."  Dkt. 49, at 8.

16        Plaintiff maintains that EPR violated the FDCPA, first, when it attempted to collect on a

17   debt which plaintiff maintains should not have existed in the first place, because "it has been

18   judicially determined that [plaintiff] did not owe money, as her medical care was covered by

19   Kaiser[.]" Dkt. 49, at 7.  Plaintiff also avers that EPR's adverse credit reporting constituted both

20   a violation of § 1692e(8)'s prohibition on falsely communicating credit information and §

21   1692f's prohibition on "unfair or unconscionable means to collect a debt." Finally, plaintiff

22   contends that defendant's *ex parte* exchange with the District Court, culminating in the dismissal

23

24

1    of EPR's second lawsuit, deprived plaintiff of knowledge regarding the status of her debt, even

2    while EPR continued to issue adverse reports to credit bureaus.  Dkt. 49, at 9.

3        There is no dispute that EPR took the actions in question; the issue of liability hinges on

4    whether EPR can assert a valid defense thereto under the FDCPA.  For the reasons discussed, the

5    Court holds that EPR cannot.

6        Plaintiff asserts that EPR's entire collection effort constituted an attempt to collect upon a

7    debt not owed, due to a judicial determination that plaintiff never owed Kaiser any money.  Dkt.

8    49, at 8.  It is unclear whether the judicial determination in question is the King County District

9    Court's second dismissal of EPR's debt collection suit, which EPR and plaintiff agree operated

10   as an adjudication on the merits of the suit, or a prior report and recommendation of this Court

11   denying summary judgment to Kaiser on the basis that its reading of the policy was untenable.

12   *See* Dkt. 49, at 7; Dkt. 23; Dkt. 35-2, at 86.  Regardless, EPR maintains that neither the county

13   district court order, nor this Court's order, operated *post hoc* to render EPR's actions unlawful,

14   because at the time, it was entitled to reasonably rely on Kaiser's reporting of the debt.  Dkt. 51,

15   at 7.

16       The FDCPA contains two exceptions to its strict liability regime in § 1692k, only one of

17   which could possibly apply here.[3] § 1692k(c) provides that

18           [a] debt collector may not be held liable in any action brought under [the
             FDCPA] if the debt collector shows by a preponderance of evidence that the
19           violation was not intentional and resulted from a bona fide error notwithstanding
             the maintenance of procedures reasonably adapted to avoid any such error.
20

21

22

23       _____
         [3] The only other exception, § 1692k(e), applies only when a collector has relied on "any advisory opinion
         of the Bureau [of Consumer Financial Protection.]"  This is not the case here.
24

It should be noted that EPR attempted to amend its answer to include this affirmative defense, but the Court denied EPR's motion to amend because it was untimely and EPR failed to show good cause to allow the amendment in violation of the Court's scheduling order.  Dkt 36.

EPR points to case law purportedly substantiating a third, unwritten defense: the collector's reasonable reliance on the creditor's representations.  Dkt. 51, at 8.  EPR relies on *Clark*, 460 F.3d 1162, 1174 (9th Cir. 2013), in which a plaintiff sued a debt collector for purported FDCPA violations in collecting a medical debt.  Therein, the Court held that the debt collector, and the debt collection attorney, "were entitled to rely on their client's statements to verify the debt" so long as their reliance was reasonable, because "the FDCPA did not impose upon them any duty to investigate independently the claims presented by" their client, and "debt collectors do not have to 'vouch for the validity of the underlying debt.'"  *Clark*, 460 F.3d at 1174.  Defendant claims that the Court distinguished the finding of reasonable reliance on a creditor's statement from the statutory defense of bona fide error.  Dkt 51, at 9 (citing *Clark*, 460 F.3d at 1177).  Yet this distinction is illusory.  Defendant's claimed third defense is not a third defense at all, but, rather, is the same affirmative defense that EPR was prohibited from making before.  The *Clark* court held that

> Pursuant to §1692k(c)'s bona fide error defense, a debt collector is not liable for its violations of the FDCPA if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors.  On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report. [. . .] *This narrow exception to strict liability under the FDCPA is an affirmative defense*[.]

1    *Clark*, 460 F.3d at 1177 (emphasis added).  Read in context, *Clark* does not support the existence

2    of a "reasonable reliance" defense independent from the affirmative defense of a claimed bona

3    fide error.

4              EPR, undaunted, cites two additional unpublished opinions, *Campbell v. Puget Sound*

5    *Collections, Inc.*, 2022 WL 73867, at *4 (W.D. Wash. 2022), and *Moonflower v. Columbia*

6    *Recovery Grp., LLC*, 2019 WL 461122 (W.D. Wash 2019), at *3.  In *Campbell*, this Court

7    granted a collector's motion for summary judgment dismissal of plaintiff's claims under

8    §1692e(2), §1692e(10), and §1692f, due to evidence that the collector had reasonably relied on

9    the information it received from its creditor client, a health care provider who had billed plaintiff

10   by mistake when she failed to update her name on file with her insurer.  *Campbell*, 2022 WL

11   73867, at *4.  In *Moonflower*, a former residential tenant sued a debt collector who attempted to

12   recover for alleged damages to the leased premises.  The plaintiff contended that the collector

13   should have determined the legitimacy of the landlord's claim for damages before reporting the

14   unpaid sum to credit bureaus and that the collector's failure to do so violated § 1692e(8).  On

15   defendant's motion for summary judgment dismissal, the Court rejected plaintiff's argument,

16   reasoning that "[t]here is neither precedent nor persuasive reason to place the burden of resolving

17   a contract dispute on debt collectors."  *Moonflower*, 2019 WL 461122, at *3.

18             EPR appears to rely on both cases for the proposition that "reasonable reliance" can exist

19   as a defense independently of the affirmative defense of bona fide error.  This Court disagrees.

20   The defendant in *Moonflower* asserted the affirmative defense of bona fide error, and this Court

21   explicitly cited the defense in reaching its decision; meanwhile, *Campbell* explicitly relied on the

22   bona fide error analysis in *Clark*.  *Moonflower*, 2019 WL 461122, at *3; *Campbell*, 2022 WL

23

24

1    73867, at *4.  Neither decision purported to uproot the liability scheme of § 1692e or the

2    narrowly drawn exception of § 1692k.

3         Here, EPR cannot assert the affirmative defense of bona fide error, because the Court has

4    denied its motion to add this defense in its answer in light of EPR's failure to comply with the

5    Court's scheduling order.  Dkt. 36.

6         Beyond the procedural bar, however, EPR's argument for reasonable reliance also fails

7    on its merits.  EPR claims that its attempt to collect on the debt was unavoidable, and that

8    "Congress never intended that the [FDCPA] impose the burden on a debt collector to police the

9    actions and practices of its creditor clients[.]"  Dkt. 51, at 13.  Nevertheless, EPR does not

10   contend that Kaiser induced it, for example, to continue reporting the debt to credit bureaus even

11   after it had voluntarily dismissed the second lawsuit and, indeed, from the time of this lawsuit's

12   commencement until January 2022.  *See* Dkt. 34-2, at 2.  Nor does EPR contend that, before this,

13   it reasonably relied on Kaiser in pursuing its unusual course of litigation against plaintiff

14   between January and April 2021.  Dkt. 34-1, at 80–86.  Thus, even if EPR were allowed to argue

15   this affirmative defense—which it is not—the defense is unavailing.

16        The undersigned recommends that, as plaintiff has met her burden of showing EPR

17   violated the FDCPA, and defendant EPR has not demonstrated a valid defense, plaintiff's motion

18   for summary judgment on the issue of EPR's liability on this claim should be granted.

19   **B. Plaintiff's WCAA/WCPA Claims Against EPR**

20        Plaintiff also seeks summary judgment on EPR's liability under the WCAA, chapter

21   19.16 RCW, which is the "state's counterpart to the FDCPA."  *Panag v. Farmers Ins. Co. of*

22   *Wash.*, 166 Wn.2d 27, 52 (2009).  The WCAA serves to protect consumers from unfair debt

23   collection practices, including "attempting to collect amounts not actually owed."  *Id.*; *see also*

24

*Dawson v. Genesis Credit Mgmt., LLC*, 2017 WL 5668073, at \*4 (W.D. Wash. 2017). The WCAA supplements federal law and makes debt collectors "subject to strict regulation to ensure they deal fairly and honestly with alleged debtors." *Panag*, 166 Wn.2d at 54.

The WCAA does not provide a debtor with a cause of action. *Genschorck v. Suttell & Hammer, P.S.*, 2013 WL 6118678 (E.D. Wash. 2013), at \*3 (citing *Connelly v. Puget Sound Collections, Inc.*, 16 Wn. App. 62 (1976)). Rather, a violation of the WCAA represents a per se violation of the WCPA. RCW 19.16.440; *Evergreen Collectors v. Holt*, 60 Wn. App. 151, 154 (1991). Once a plaintiff establishes a per se violation of the WCPA, she need only demonstrate that the violation proximately caused injury to her person or property. *Panag*, 166 Wn.2d at 43 (2009) (citation omitted).

Here, plaintiff alleges a WCAA violation pursuant to RCW 19.16.250(21). The subsection in question provides that a collection agency may not

> Collect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs[.]

Here, plaintiff contends that EPR's attempt to collect the principal amount of the debt in dispute violates RCW 19.16.250(21). However, the subsection proscribes collection of amounts "in addition to" the principal, not a disputed principal amount on its own. Nothing in the statute prohibits a collection agency from attempting to collect *the principal amount* of the disputed debt. Plaintiff's contention that "attempting to collect anything at all is prohibited by the statute" is without merit. Dkt. 49, at 11.

RCW 19.16.250(21) does not purport to prevent any debt collector from bringing an action when the debt is disputed. *See, e.g., Eng v. Specialized Loan Servicing*, 20 Wn. App. 2d 435, 440 (2021) (creditor attempting to collect debt that was time-barred did not violate RCW

19.16.250(21)); *Opico v. Convergent Outsourcing, Inc.*, 2021 WL 1611505, at *1 (W.D. Wash. 2021) (action to collect against party that was not the true debtor did not violate RCW 19.16.250(21) because nothing more than principal amount was sought); *Syria v. AllianceOne Receivables Mgmt., Inc.*, 2018 WL 3455499, at *3 (W.D. Wash. 2018), *affirmed*, 770 F. Appx. 861 (9th Cir. 2019) (collecting credit card transaction fee in addition to amount of traffic fine did not violate RCW 19.16.250(21) because RCW 19.16.500(1)(b) and (4) permit courts to charge these fees).

Here, EPR sought nothing beyond the principal amount of the disputed debt. It did not pursue pre-judgment interest, fees, costs, or any other charges, the collection of which would be prohibited under RCW 19.16.250(21). Because the statute is inapplicable to the claim at issue here, EPR is entitled to judgment as a matter of law on the issue of its liability under WCAA. In turn, because plaintiff's WCPA claim is contingent on the showing of a WCAA violation, plaintiff's WCPA claim fails.

The undersigned recommends denying plaintiff's motion for summary judgment as to this claim and granting EPR's motion for its dismissal.

## II. EPR's Cross-Motion for Summary Judgment

In its cross-motion for summary judgment, EPR seeks summary judgment dismissal of all of plaintiff's claims against it. Dkt. 51, at 6. As it pertains to plaintiff's FDCPA, WCAA and WCPA claims, EPR's cross-motion is addressed above, *supra* Section I. However, EPR also seeks dismissal of plaintiff's common law outrage and conspiracy claims against it. Dkt. 51, at 21–24.

1    **A. Outrage**

2        Outrage requires proof of three elements: (1) extreme and outrageous conduct, (2)

3    intentional or reckless infliction of emotional distress, and (3) an actual result of severe

4    emotional distress to the plaintiff. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). The alleged

5    conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all

6    possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

7    community." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975). Whether the conduct

8    is sufficiently outrageous is ordinarily a question for the jury, but courts must initially determine

9    whether reasonable minds could differ as to whether the conduct was so extreme as to warrant

10   liability. *Robinson v. Pierce County*, 539 F. Supp. 2d 1316, 1332–33 (W.D. Wash. 2008). EPR

11   maintains that no outrage claim can exist where it did nothing more than rely on its creditor

12   client's assertion that a debt was past due. EPR's two validation letters and two attempted

13   telephone calls, and its eventual commencement of two civil actions, could certainly have been

14   frustrating, but it did not effect outrageous conduct that "shocks the conscience." Plaintiff fails

15   to allege with any specificity how this conduct injured her in any manner. There is no allegation

16   of "*severe* emotional distress" of the type contemplated by the tort of outrage. *Kloepfel*, 149

17   Wn.2d at 195.

18        Plaintiff cites *Lucero v. Cenlar FSB*, 2016 WL 337221 at *7 (W.D. Wash. 2016), for

19   support. Therein, a loan servicer imposed baseless charges against a mortgagor over a period of

20   several years, with the effect of preventing the mortgagor from staying current on the underlying

21   mortgage. *Id.* This Court held that the conduct, due in part to the power disparity between the

22   servicer and mortgagor, caused the servicer's conduct to be an effective threat to force the

23   mortgagor from her home, supporting the proposition that it caused severe emotional distress.

24

*Id.* Here, Evergreen's conduct was inappropriate and may even have prevented plaintiff from achieving home ownership, but this is not the same as threatening to force someone out of the home in which they live. In short, it does not "shock the conscience" and is not "utterly intolerable", as is required to prevail on this claim under Washington law.

The undersigned recommends that EPR's motion for summary judgment dismissal as to this claim for outrage be granted.

### B. Conspiracy

A claim for civil conspiracy has two elements: a plaintiff must show (1) two or more people combined to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. *All Star Gas, Inc., of Washington v. Bechard*, 100 Wn. App. 732, 740 (2000). A mere commonality of interest is insufficient to establish the claim; the party alleging civil conspiracy must present clear, cogent and convincing evidence of the scheme. *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 529 (1967). As with any claim, when a defendant moves for summary judgment, the non-moving plaintiff must come forth with sufficient evidence to show that there exists a genuine issue of material fact that cannot be resolved by summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). The plaintiff cannot rely on mere allegations, but rather has an affirmative duty to come forth with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

To support this claim, plaintiff points to "several written agreements between EPR and Kaiser," including a "collection services agreement" and an "assignment" for collection, "in addition to a series of emails between EPR and Kaiser in which there was considerable discussion concerning how to hold [plaintiff] liable for Kaiser's bills." Dkt. 56, at 8. While this

1    establishes that two entities combined, plaintiff's claim hinges on whether there is sufficient

2    evidence of defendants' unlawful purpose—which plaintiff asserts to be "attempting to collect on

3    money which was not owed[.]" *Id.* Here, however, the "series of emails" appears to simply be

4    communications between EPR and Kaiser in which Evergreen asked for supporting documents in

5    its prior lawsuit and then discussed strategy in defending the instant lawsuit. Dkt. 56-1, at 9–35.

6    The content of these communications would appear to indicate that both EPR and Kaiser

7    believed their position in the anticipated litigation had merit. The totality of EPR and Kaiser's

8    communications produced by the plaintiff—debt collection agreements, assignment, and

9    emails—does not show that defendants combined to accomplish an unlawful purpose or a lawful

10    purpose through unlawful means, an essential element of a conspiracy claim. *See All Star Gas*,

11    100 Wn. App. at 740. As plaintiff "has failed to make a sufficient showing on an essential

12    element of her case with respect to which she has the burden of proof," summary judgment

13    dismissal of plaintiff's conspiracy claim is proper. *Celotex*, 477 U.S. at 323.

14    Therefore, the undersigned recommends that EPR's motion for summary judgment on the

15    conspiracy claim be granted.

16    **III. Plaintiff's Motion Against Kaiser and Kaiser's Cross-Motion**

17    Next, the Court turns to plaintiff and Kaiser's cross motions for summary judgment as to

18    Kaiser's liability under the WCPA. *See* Dkt. 49, at 19; Dkt. 52, at 2.

19    A WCPA claim requires a showing of (1) an unfair or deceptive practice, (2) in trade or

20    commerce, (3) that impacts the public interest, (4) which causes injury to the party in his or her

21    business or property, and (5) which injury is linked to the unfair or deceptive act. *Hangman*

22    *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986).

23

24

1      A. Plaintiff's "Per Se" WCPA Claims

2          Plaintiff seeks summary judgment against Kaiser on WCPA claims predicated upon

3      violations of Washington insurance regulations, as such violations satisfy the first two elements

4      of a WCPA claim.  *Panag v. Farmers Ins. Co. of Wash.,* 166 Wn.2d 27, 43 (2009).  Plaintiff

5      alleges violations of several laws and regulations governing insurers in Washington: RCW

6      48.01.030, which imposes a duty of good faith; and WAC 284-30-330(1), which prohibits an

7      insurer from "misrepresenting pertinent facts or insurance policy provisions[.]"  Although

8      plaintiff's opening brief also sought summary judgment against Kaiser for violating of RCW

9      48.46.110(3), which prohibits a HMO from seeking charges "for any amount above the actual

10     cost of providing" services excluded from a participant's HMO plan, plaintiff has withdrawn this

11     contention on reply.  *See* Dkt. 49, at 22; Dkt. 56, at 12.

12         Kaiser first argues that plaintiff cannot base her WCPA claim on anything that Kaiser did

13     or did not do before June 16, 2017, because such claims would be time-barred.  Dkt. 52, at 10.  A

14     WCPA claim has a four-year statutory limitation period.  RCW 19.86.120.  As plaintiff

15     commenced this action on June 16, 2021, the limitation period ran on any alleged conduct

16     violating the WCPA prior to June 16, 2017.  Plaintiff does not dispute this, nor does she assert

17     that any of her WCPA claims should be tolled; rather, she alleges that her claims are "plainly

18     within" the four year period, because Kaiser assigned the debt to EPR in 2018, and "Kaiser

19     caused [plaintiff] to be sued in 2018, sued her again in 2020, [and] caused adverse credit

20     reporting the entire time[.]"  Dkt. 56, at 16–17.  With the sole exception of the 2018 assignment

21     agreement, all of these alleged misdeeds of Kaiser within the statutory limitation period were

22     plainly acts committed by EPR without Kaiser's input.  *See* Dkt. 34-1, at 70, 80; Dkt. 35-1, at 99;

23     Dkt. 38, at 3.  All of the court filing captions in the 2018 and 2020 debt collection actions, as

24

1    well as all of the adverse credit reporting, displays EPR's name alone as the collector-plaintiff.

2    *Id.*  Plaintiff's bare assertion, on reply, that Kaiser committed all of these actions through EPR is

3    unsupported by any of the evidence plaintiff has put forth.

4         As to the assignment, EPR's assignment request to Kaiser indicates that Kaiser would

5    "transfer, assign and set over . . . its claim against [plaintiff] in the amount stated to [EPR] to sue

6    for, compromise, settle, or reassign in their name, said account for collection purpose." Dkt. 35-

7    1, at 99.  However, this is not, on its own, conduct giving rise to plaintiff's bad faith and

8    misrepresentation claims pursuant to the WCPA; nor does it establish a continuing WCPA

9    violation such that the statutory limitation period could be tolled.

10        Kaiser also cites plaintiff's deposition to support the proposition that plaintiff became

11   aware of Kaiser's position in 2016 and 2017—before the expiration of the applicable limitation

12   period. Dkt. 52, at 10.  In the deposition, plaintiff admitted to receiving a letter from Kaiser's

13   predecessor in interest on February 21, 2017, and contacting the lawyer she had hired to

14   represent her in her personal injury claim at that time.  Dkt. 40, at 8.  However, Kaiser does not

15   include this letter as evidence in its declaration supporting the motion for summary judgment.

16   While plaintiff stated that she remembered the communications and talked to her attorney at the

17   time, neither party has produced evidence of what the letter did or did not say.  Dkt. 40, at 8.

18   Kaiser maintains plaintiff's awareness of the issue is also supported by her efforts to contact

19   Kaiser regarding the debt in April 2017.

20        Regardless of whether the letter in question supports an earlier commencement date for

21   the limitation period, Kaiser is not liable for any allegedly unfair or deceptive acts that occurred

22   prior to June 16, 2017.  In order to prevail on her WCPA claims, plaintiff must prove that Kaiser

23   committed an unfair or deceptive practice after June 16, 2017.  Accordingly, the undersigned

24

1  recommends granting summary judgment in favor of Kaiser as to plaintiff's WCPA claim with

2  respect to any alleged unfair or deceptive practice occurring prior to that date.

3                  1. RCW 48.01.030: Duty of Good Faith

4        Plaintiff claims that Kaiser breached the insurer's duty of good faith when it denied her

5  coverage for her medical procedures without reasonable justification.  Dkt. 49, at 20–21.  Again,

6  the parties have filed cross motions for summary judgment on this claim Dkts.  49, 52.

7        As discussed above, this claim derives from actions Kaiser took prior to the statutory

8  limitation period and must be dismissed for this same reason.  Nevertheless, even if plaintiff's

9  claim was not time-barred, Kaiser would be entitled to judgment as a matter of law.  Plaintiff

10  bases her argument on this Court's prior report and recommendation, later adopted in an order,

11  that found Kaiser's interpretation of the insurance contract to be "unreasonable":

12          Moreover, Kaiser's interpretation—that whether or not plaintiff "filed a
     claim with Progressive, the exclusion applied"—is unreasonable.  *See* Dkt. 20, at

13       9.  If this were the case, then plaintiff would be liable notwithstanding her HMO
     coverage, merely because she carried other insurance and regardless of whether

14       any benefits were paid to her under the other insurance.  That is not a tenable
     reading of the exclusion.

15       Therefore, the Court concludes that the exclusion in question
     unambiguously applies only to a member who in fact "receives" benefits from

16       other, PIP coverage.

17  Dkt. 23, at 11.

18        Kaiser, for its part, first notes that the prior order "did not find that [Kaiser]'s overall

19  position was unreasonable or, more to the point, in bad faith." Both parties rely on the

20  Washington Supreme Court's holding in *Leingang v. Pierce County Medical Bureau*, 131 Wn.2d

21  133, 155 (1997).  Therein, the Court discussed the line between reasonable and unreasonable

22  justifications for denying coverage:

23       [Plaintiff] correctly argues that an insurer's denial of coverage, without
     reasonable justification, constitutes an unfair act under the [WCPA].  However, a

24

1
2

denial of coverage, although incorrect, based on reasonable conduct of the insurer does not constitute an unfair trade practice. [. . .] Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the [WCPA].

3

*Leingang*, 131 Wn.2d at 155 (citations omitted).

4

5

As in *Leingang*, the relevant inquiry is thus whether Kaiser "had a reasonable

6

justification for relying on" its construction of the exclusion that this Court later rejected. *Id.*

7

Plaintiff presents scant argument to support the proposition that Kaiser did not, instead resting on

8

this Court's prior finding that Kaiser's interpretation of its policy was unreasonable, such that it

9

could not support summary judgment dismissal of plaintiff's claims—not that Kaiser's overall

10

position was frivolous, outlandish, or taken in bad faith.

11

Yet all of this is secondary to the operation of the WCPA statute of limitation. RCW

12

19.86.120. Plaintiff has not alleged any action by Kaiser within the four years prior to the

13

commencement of this action that would allow her claim to go forward. For this reason, the

14

undersigned recommends denying plaintiff's motion for partial summary judgment as to this

15

WCPA claim and granting Kaiser's motion for summary judgment dismissal on the same.

16

### 2. WAC 284-30-330(1): Misrepresentation

17

Next, plaintiff claims that Kaiser violated Washington state insurance regulation WAC

18

284-30-330(1), which prohibits "[m]isrepresenting pertinent facts or insurance policy

19

provisions." This is so, plaintiff asserts, because "[f]or many, many years, Kaiser offered *several*

20

competing misrepresentations about why [plaintiff] owed $15,632.0[.]" Dkt. 49, at 21 (emphasis

21

added). Plaintiff identifies only two explanations, however: first, that Kaiser denied benefits

22

because she was non-compliant with requests for more information; and, later, that Kaiser denied

23

benefits due to her failure to invoke PIP coverage. *Id.* at 21–22. The first communication stated:

24

> Our records reflect your current balance owing to [Kaiser] is $16,022. These claims were denied by your health plan for being non-compliant with Kaiser Permanente's request for information regarding your recent motor vehicle accident.

Dkt. 19-1, at 9. Kaiser has not provided any further information as to what was meant by this communication; the parties dispute whether plaintiff took any action in response to the message. In any event, however, the statutory limitation period controls. The communication in question took place in April 2017, more than four years before plaintiff commenced this action. Thus, it does not matter whether plaintiff received letters from Kaiser notifying her of the issue before this time—plaintiff has not alleged any misrepresentation by Kaiser of its position within the statutory limitation period; rather, plaintiff points only to Kaiser's communications since 2021 that she owed money due to her alleged failure to file a PIP claim—an accurate representation of its position in the present litigation. Dkt. 49, at 21. Because there are no disputes of material fact arising from communications within the relevant period, and because Kaiser made no misrepresentations of its position during the relevant period, the undersigned recommends granting Kaiser's motion for summary judgment dismissal of this claim and denying plaintiff's motion for partial summary judgment on the same.

### B. Plaintiff's "Traditional" WCPA Claims

Plaintiff also alleges that Kaiser committed other "unfair or deceptive act[s] or practice[s]" that do not give rise to "per se" violations of the WCPA, because they are not specifically proscribed by statute, but which nevertheless fall within the statute's purview. Plaintiff faults Kaiser for (1) causing her to be sued for collection of a debt she did not owe; (2) making false statements about the nature of the debt; and (3) failing to monitor EPR's debt collection efforts.

1      Plaintiff's first two allegations are duplicative of the "per se" WCPA violations discussed

2   above, *supra* Section III.A.  As explained therein, Kaiser has shown entitlement to summary

3   judgment dismissal on these two claims, as they both are predicated on alleged wrongdoing that

4   occurred outside of the statutory limitation period.  Plaintiff's third allegation, however,

5   addresses the nature of Kaiser's relationship with EPR as it related to plaintiff in her efforts to

6   resolve the debt.  Plaintiff argues that Kaiser "execute[d] a perfunctory authorization for a

7   lawsuit" and then failed to "involve itself in the lawsuit against [plaintiff]," which prevented

8   plaintiff from receiving "actual answers about why she was sued[.]" Dkt. 49, at 5.  Plaintiff,

9   somewhat confusingly, compares this conduct to "firing a cannon into the sea." *Id.*  While

10   plaintiff alleges that these business dealings between a creditor and collector were unhelpful in

11   her efforts to resolve the dispute, she does not allege how this action is "unfair or deceptive" as

12   would be required for the first element of a WCPA claim.  *Hangman Ridge*, 105 Wn.2d at 784–

13   85.  There is no allegation that plaintiff was "deceived" by transactions that occurred between

14   Kaiser and EPR as it related to her debt; instead, plaintiff points to EPR's alleged misconduct in

15   the collection suit and appears to argue that Kaiser's inaction facilitated this misconduct.

16   Kaiser's purported failure to involve itself in EPR's debt collection efforts does not support a

17   WCPA claim against Kaiser.  Thus, the undersigned recommends denying plaintiff's motion for

18   summary judgment as to this alleged WCPA violation and granting Kaiser's motion for summary

19   judgment dismissal of this claim.

20                                  **CONCLUSION**

21      Based on the foregoing, the undersigned recommends that plaintiff's motion for partial

22   summary judgment (Dkt. 49) be GRANTED as to plaintiff's FDCPA claims against EPR and

23   DENIED as to all other claims against EPR and Kaiser.  The undersigned recommends that

24

1    EPR's motion for partial summary judgment be GRANTED as to the WCPA and common law

2    claims against it and DENIED as to the FDCPA claim against it.  Finally, the undersigned

3    recommends that Kaiser's motion for partial summary judgment be GRANTED as to all claims.

4         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

5    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6    6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

7    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

8    objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

9    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit

10   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

11   November 18, 2022, as noted in the caption.

12        Dated this 2nd day of November, 2022.

13

14        _____

15        J. Richard Creatura
          Chief United States Magistrate Judge

16

17

18

19

20

21

22

23

24